IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LISA BENARON, | 3:19-cv-01653-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| BRETT SIMIC, | |
| Defendant. | |

**ROBERT PARKER**
Holt Woods & Scisciani LLP
101 S.W. Main Street
Suite 1600
Portland, OR 97204
(503) 542-1200

    Attorneys for Plaintiff

**LLOYD BERNSTEIN**
**ALEXANDER H. HILL**
Bullivant Houser Bailey, PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
(503) 228-6351

    Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Brett Simic's Partial Motion (#3) to Dismiss for Lack of Personal Jurisdiction. The Court concludes the record on this Motion is sufficiently developed, and, therefore, oral argument would not be helpful. For the reasons that follow, the Court **DENIES** Defendant's Motion.

## BACKGROUND

The following facts are taken from Plaintiff Lisa Benaron's First Amended Complaint and the parties' filings related to Defendant's Motion to Dismiss and are taken as true unless otherwise noted.

In 2016 Plaintiff, a licensed physician, was a resident of California and the medical director at Far Northern Regional Center (FNRC) in California. Plaintiff also worked weekend shifts at Enloe Medical Center facilities including Enloe Prompt Care in California. In 2016 Plaintiff and Defendant were friends.

On August 11, 2016, Defendant sent Plaintiff a text with a picture of his finger that he had injured. Defendant asked Plaintiff where he should go for treatment. Plaintiff recommended Defendant go to Enloe Medical Center's Prompt Care

department.[1]  Two days later Defendant contacted Plaintiff and told her that he was getting conflicting advice from medical professionals about his injury.  The next time Plaintiff was at Enloe Prompt Care she reviewed Defendant's x-ray and asked a colleague for his advice regarding proper treatment of patients with the type of injury that Defendant had suffered.  Plaintiff then recommended to Defendant that he go to the Orthopedic Trauma Clinic at Enloe Medical Center.  Defendant asked Plaintiff "several follow-up questions, which [Plaintiff] answered, seemingly to Defendant's satisfaction."  First Am. Compl. at ¶ 7.  "The following day, [Defendant] followed up with Plaintiff, asking for more support."  *Id*.

On August 16, 2016, Defendant filed a complaint with Enloe Medical Center in which he "demanded [Plaintiff] be fired for a HIPAA violation, on the basis that she had looked at his x-ray without express consent."  First Am. Compl. at ¶ 8.  Defendant's complaint triggered a mandatory investigation by Enloe Medical Center and "the regulatory agency."  *Id*.

On August 18, 2016, Plaintiff told Defendant that she would not have any further contact with him and "suggested that he seek

---

[1] Although Plaintiff alleges Defendant was a resident of Wyoming "at all relevant times," it is unclear whether Defendant was visiting California at the time of his injury or if he was a resident of California in August 2016.  The Court, however, need not resolve this question in order to decide Defendant's Motion to Dismiss.

help for his mental health issues." First Am. Compl. at ¶ 9.

On August 21, 2016, Defendant contacted FNRC and demanded to speak with the Executive Director. Defendant was transferred to the Human Resources Department and demanded they investigate Plaintiff for sharing patient information in 2015, a claim for which Plaintiff alleges Defendant did not have any factual basis. FNRC investigated Defendant's claim and concluded Defendant's sole purpose for the call was to harass one of their employees. FNRC then contacted the Chico Police Department. Officer Cory Barrow of the Chico Police contacted Defendant, told him that his actions constituted harassment, and demanded Defendant "cease and desist from contacting Plaintiff or anyone relating to Plaintiff." First Am. Compl. at ¶ 10. Defendant told Officer Barrow that he should investigate Plaintiff for committing a hate crime against Defendant by reporting Defendant to the police.

On August 26, 2016, Defendant filed a complaint with the California Medical Board against Plaintiff that "included allegations regarding [Defendant's] broken finger, but also included new allegations that [Defendant] had fabricated from stories [Plaintiff] had told him, that did not involve [Defendant] in any way." First Am. Compl. at ¶ 11. The California Medical Board ultimately resolved the matter with a public letter of reprimand against Plaintiff for failing to explicitly confirm that she had Defendant's consent before

looking at the x-ray report.

"Due in part to the substantial emotional stress and lost time and wages that [Plaintiff] suffered from [Defendant], and the fact that [Defendant] showed no intention of ceasing his attacks on her, [Plaintiff] ultimately decided . . . she had to get away from [Defendant]" by moving out of California. First Am. Compl. at ¶ 12. At some point Plaintiff moved to Portland, Oregon. After moving Plaintiff disclosed Defendant's harassment to the Oregon Medical Board and his complaint to the California Medical Board.

During the relevant period Plaintiff's daughter, Molly Steindorf, attended the University of Washington.

From December 2016 through February 2017 Defendant began repeatedly calling and emailing the University of Washington claiming he had information "for an existing student" who was "trying to get out of the non-residency requirement and higher fees." First Am. Compl. at ¶ 14. Defendant "falsely stated on repeated occasions" that he was a "businessman with many interests in the Great State of Washington" who was seeking to "protect the integrity of [the school]. Defendant confirmed that the student in question was Molly Steindorf." *Id*.

Plaintiff asserts Defendant does not have any relationship with Steindorf, that he not have any legitimate purpose for contacting the University, and that Defendant's sole purpose in

5 - OPINION AND ORDER

contacting the University was "to injure [Plaintiff] through contact with her immediate family, with the intent of either causing [Plaintiff] emotional duress, or causing [Plaintiff] to pay more for Steindorf's tuition, or both."  First Am. Compl. at ¶ 15.

The University did not take any action in response to Defendant's December 2016 through February 2017 contacts other than to warn Steindorf that Defendant might be stalking her.

In August 2017 Defendant again repeatedly called the University about Steindorf.  On August 9, 2017, Defendant emailed the University demanding an update on Steindorf.

On August 9, 2017, Defendant provided the University "with private, confidential information about [Plaintiff] and Steindorf, including details regarding [Plaintiff's] personal relationships and tax status."  First Am. Compl. at ¶ 17. Defendant told the University that "our tax lawyers" could not "figure out any way in which Steindorf could qualify for resident tuition."  *Id*.  Plaintiff alleges this was "another attempt to directly and indirectly cause [Plaintiff] emotional and financial distress through her daughter."  *Id*.  The University advised Defendant that it would not provide him with any more feedback or information.

On December 11, 2017, Plaintiff began working as a doctor at Landmark Health in Portland, Oregon.  Plaintiff, however, "did

not tell [Defendant] or make public knowledge where she worked."
First Am. Compl. at ¶ 18.

Plaintiff alleges in 2018 and 2019 Defendant "began contacting Portland-area hospitals for the sole purpose of tracking down" Plaintiff.  First Am. Compl. at ¶ 18.

On March 21, 2019, Defendant called Landmark Health.  A care coordinator confirmed Plaintiff was a doctor there.  Defendant then asked the care coordinator to investigate Plaintiff and told the care coordinator that "there's a pretty serious allegation against [Plaintiff] in the state of California, and I don't know if you guys are aware of that as her employer."  Defendant stated the allegation was "pretty serious," that it had "potential for a license revocation and some jail time," and that the "Attorney General is involved."  First Am. Compl. at ¶ 19.  Defendant told the care coordinator that if she "read the Attorney General's filing," she would find Plaintiff "knew about that and didn't disclose that to you guys."  *Id*.  Defendant did not provide the care coordinator with his name and stated he was "a consumer in the Great State of Oregon."  *Id.*  Defendant then threatened to call Landmark Health's main headquarters, "investor relations," and "whoever handles the hiring."  *Id*.  At that point the care coordinator provided Defendant with contact information for Landmark Health's Human Resources Department.

On March 21, 2019, Defendant called Landmark Health's Human

Resources Department.  Defendant repeated many of the accusations from the earlier call to Landmark Health and accused Landmark of suspect business and hiring practices for allowing Plaintiff to work there without discovering that she was under investigation in California.  Defendant indicated Plaintiff had "got[] into trouble with her employer in California and that was why she had moved to Oregon and gotten a job with Landmark."  First Am. Compl. at ¶ 20.  When the Human Resources representative asked who he was, Defendant replied:  "I could be an ex-spouse, her patient, a doctor, or an attorney."  *Id.*  Defendant told Landmark that he had a meeting set up with the Attorney General in the first week of April 2019, that he had "several meetings" in Oregon, and that he had already "taken it up the ranks in the state of California."  *Id.*

On June 11, 2019, Plaintiff filed an action against Defendant in Multnomah County Circuit Court.  Plaintiff alleged claims for intentional interference with business relations, false light, harassment, intentional infliction of emotional distress (IIED), and damages in the amount of $74,999.

On July 22, 2019, Defendant filed a Motion to Dismiss Plaintiff's Complaint on the grounds that the Multnomah County Circuit Court lacked personal jurisdiction over Defendant and that Plaintiff failed to state a claim.

On August 29, 2019, the Multnomah County Circuit Court

8 – OPINION AND ORDER

heard oral argument on Defendant's Motion.

On September 10, 2019, Multnomah County Circuit Court Judge Leslie Roberts issued an Order denying Defendant's Motion to Dismiss.

On October 4, 2019, Plaintiff filed a First Amended Complaint against Defendant in Multnomah County Circuit Court alleging claims for intentional interference with business relations, false light, harassment, and IIED and seeking damages in the amount of $850,000.

On October 15, 2019, Defendant removed the matter to this Court on the ground of diversity jurisdiction.

On October 25, 2019, Defendant filed a Partial Motion (#3) to Dismiss for Lack of Personal Jurisdiction. The Court took Defendant's Motion under advisement on November 22, 2019.

## **STANDARDS**

When "the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction." *Dist. Council No. 16 of Intern. Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass Workers, Local 1621 v. B&B Glass, Inc.*, 510 F.3d 851, 855 (9th Cir. 2007)(citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). "The

court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)(citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). If the court makes a jurisdictional decision based only on pleadings and affidavits submitted by the parties and does not conduct an evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction. *B&B Glass*, 510 F.3d at 855 (citation omitted). When determining whether the plaintiff has met the *prima facie* showing, the court must assume the truth of uncontroverted allegations in the complaint. *Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1187 (9th Cir. 2002).

In addition, when the court rules on a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff's version of the facts is taken as true unless directly contravened, and the court must resolve factual conflicts in the parties' affidavits in the plaintiff's favor. *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements LTD*, 328 F.3d 1122, 1129 (9th Cir. 2003).

**DISCUSSION**

Defendant moves to dismiss the portion of Plaintiff's claims for intentional interference with business relations and

defamation that are based on allegations relating to the University of Washington on the ground that this Court does not have personal jurisdiction over Defendant for the Washington portion of those claims. Plaintiff asserts this Court has both specific and general jurisdiction.

## I. Specific Jurisdiction Standards

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009) (quotations omitted). "Oregon's long-arm statute confers jurisdiction to the outer limits of due process under the United States Constitution." *Pacific Reliant Indus., Inc. v. Amerika Samoa Bank*, 901 F.2d 735, 737 (9th Cir. 1990)(citation omitted). *See also J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2800 n.8 (2011)("State long-arm provisions allow the exercise of jurisdiction subject only to a due process limitation in . . . Oregon"); Or. R. Civ. P. 4L. Oregon's long-arm statute, therefore, is co-extensive with the limits of due process. *Gleason v. Carter*, No. 3:12-CV-01265-HA, 2012 WL 4482372, at *4 n.1 (D. Or. Sept. 25, 2012).

"The due process analysis, in turn, centers on whether [a

nonresident defendant] has 'certain minimum contacts' with [the forum state], such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fiore v. Walden*, 688 F.3d 558, 573 (9th Cir. 2012) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

A court has specific jurisdiction over a defendant when "the controversy [was] sufficiently related to or arose out of the defendants' contacts with the forum." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). The Ninth Circuit applies the following three-part test to determine whether a district court constitutionally may exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities . . . [to a] resident [of the forum state] . . . ;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd v. Aero Law Group*, 905 F.3d 597, 603 (9th Cir. 2018)(quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). This "minimum contacts test 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Freestream Aircraft*, 905 F.3d at 603

12 - OPINION AND ORDER

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

"If the plaintiff fails to satisfy either of [the first two] prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

> To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft*, 905 F.3d at 607 (quotation omitted).

Because the Court concludes it has specific jurisdiction over the claims at issue, the Court does not evaluate general jurisdiction.

## II. Purposeful Direction

The record does not reflect Defendant is or ever has been an Oregon resident or that he physically entered Oregon. Defendant asserts he is a Wyoming resident; that Plaintiff's allegations regarding Defendant's contacts with the University of Washington

13 - OPINION AND ORDER

"bear no connection to [Plaintiff's] Oregon claims"; and, therefore, this Court lacks personal jurisdiction over the portion of Plaintiff's claims for intentional interference with business relations and defamation that are based on allegations relating to the University of Washington. Plaintiff, on the other hand, asserts Defendant's interactions with the University of Washington were intentional conduct outside of Oregon that was calculated to cause injury to Plaintiff in Oregon, and, therefore, this Court has personal jurisdiction over Defendant as to Plaintiff's claims for intentional interference with business relations and defamation.

Plaintiff alleges in her claim for intentional interference with business relations arising from Defendant's contacts with the University of Washington that (1) Plaintiff "had an existing business relation, as indirect beneficiary and payor of her daughter's tuition, with University of Washington"; (2) Defendant contacted the University "for the purpose of causing financial injury against [Plaintiff] by either increasing Steindorf's tuition, or depriving [Plaintiff] of the value of the relation by having Steindorf expelled or otherwise sanctioned"; (3) Defendant misrepresented facts in his contacts with the University; (4) Defendant's interference was solely for the "improper purpose of third-party harassment and to cause [Plaintiff] economic damages and emotional distress"; and (5) Plaintiff suffered

14 - OPINION AND ORDER

damages as a result of Defendant's contacts with the University. In her defamation claim Plaintiff alleges Defendant "imputed criminal conduct and moral turpitude onto [Plaintiff], accusing [her] of defrauding a state university and avoiding taxes" in his telephone and email contacts with the University; that Defendant knew these accusations were false; and that Defendant made the contacts with actual malice.

In *Calder v. Jones* "the Supreme Court established the effects test, whereby a defendant can be subject to personal jurisdiction based on 'intentional conduct [outside the forum] calculated to cause injury to [a plaintiff] in [the forum].'" *Freestream Aircraft*, 905 F.3d at 604 (quoting *Calder*, 465 U.S. 783, 791 (1984)). The Ninth Circuit has repeatedly "reaffirmed . . . that *Calder* extended the reach of personal jurisdiction to a defendant who never physically entered the forum state." *Freestream Aircraft*, 905 F.3d at 604. *See also Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)("[T]he [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."); *Schwarzenegger*, 374 F.3d at 802 (courts have personal jurisdiction over a defendant who "purposefully directed his conduct toward a forum state" when "the defendant's actions outside the forum state . . . are

15 - OPINION AND ORDER

directed at the forum.").

"Purposeful direction requires . . . the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017)(quotation omitted). "An intentional act is one denot[ing] an external manifestation of the actor's will." *Id*. (quotation omitted).

The circumstances alleged by Plaintiff as to Defendant's contacts with the University are similar to those in *Calder*. In *Calder* the plaintiff, a California resident, brought an action in California Superior Court against two Florida residents alleging they had written and edited a libelous article about the plaintiff that was published in the National Enquirer. 465 U.S. at 789. The trial court held it did not have personal jurisdiction over the Florida defendants. The California Court of Appeal reversed, and the defendants appealed. The United States Supreme Court affirmed the California Court of Appeals and concluded the California court had personal jurisdiction. The Supreme Court found the defendants' actions "were expressly aimed at California" even though the article at issue was circulated nationwide. *Id*. The Court reasoned:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in

> California.  The . . . brunt of the harm, in terms
> both of respondent's emotional distress and the
> injury to her professional reputation, was
> suffered in California. . . . Jurisdiction over
> petitioners is therefore proper in California
> based on the "effects" of their Florida conduct in
> California.

*Calder*, 465 U.S. at 788-89.  The Court also noted the defendants wrote and edited the article "that they knew would have a potentially devastating impact upon respondent.  And they knew that the brunt of that injury would be felt by respondent in [California,] the State in which she lives and works."  *Id*. at 789-90.  "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."  *Id*. at 790.

The Ninth Circuit has also reached a similar conclusion in several cases.  For example, in *Brainerd v. Governors of the University of Alberta* the Ninth Circuit concluded an Arizona court could exercise specific jurisdiction over Canadian residents who, in response to telephone calls directed to them in Canada, made statements that allegedly defamed a person they knew resided in Arizona.  873 F.2d 1257, 1259-60 (9th Cir. 1989).  The Ninth Circuit found the statements made by the defendants about the plaintiff were not "untargeted negligence" but rather were "performed for the very purpose of having their consequences felt in the forum state."  *Id.  See also Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir.1996)(holding specific jurisdiction

17 - OPINION AND ORDER

existed in light of evidence of "targeting" of the plaintiff, who was a forum resident); *Lake v. Lake*, 817 F.2d 1416, 1422-23 (9th Cir. 1987)(specific jurisdiction existed when the defendant performed foreign acts for the purpose of having their consequences felt in the forum state).

Here, as in *Calder* and *Brainerd*, Defendant's contacts with the University were not "untargeted negligence" but rather were "performed for the very purpose of having their consequences felt in the forum state"; *i.e.*, for the purpose of causing Plaintiff financial injury by increasing Steindorf's tuition or for the purpose of depriving Plaintiff of the value of the relationship with the University by having Steindorf expelled or sanctioned.

The Court, therefore, concludes Plaintiff has satisfied the first two prongs of the personal-jurisdiction analysis.

**III. Reasonableness of the Exercise of Personal Jurisdiction**

As noted, when the plaintiff succeeds in satisfying both of the first two prongs of the personal-jurisdiction analysis, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp.*, 471 U.S. at 476-78).

> To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's

> state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft*, 905 F.3d at 607 (quotation omitted).

Defendant asserts the exercise of jurisdiction would not be reasonable because:

> [Defendant's] Wyoming residency [is] outside of the 100 miles under which the district court may exercise subpoena powers, the University of Washington – where witnesses for these allegations would be located – is also located more than 100 miles from the district court, placing it outside the boundaries of Fed. R. Civ. P. 45(c)(1). With no interest, connection, or residency . . . in Oregon. . . [Defendant] has a high burden to defend himself in this forum for alleged actions in Washington.

Def.'s Partial Mot. to Dismiss at 9. As a resident of Wyoming, however, Defendant is also more than 100 miles away from the district court that contains the University of Washington (the United States District Court for the Western District of Washington), and, therefore, the subpoena-power factor does not favor that forum more than the District of Oregon. In addition, Oregon "has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Gov. of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

On this record the Court concludes Defendant has not "present[ed] a compelling case" that this Court's exercise of

19 - OPINION AND ORDER

jurisdiction over the portion of Plaintiff's claims relating to Defendant's contacts with the University of Washington would be unreasonable.

Accordingly, the Court concludes it has personal jurisdiction over the portion of Plaintiff's claims relating to Defendant's contacts with the University of Washington, and, therefore, the Court denies Defendant's Partial Motion to Dismiss.

## **CONCLUSION**

For these reasons, the Court **DENIES** Defendant's Partial Motion (#3) to Dismiss for Lack of Personal Jurisdiction.

IT IS SO ORDERED.

DATED this 22nd day of January, 2020.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge